cc: filer, SASP

ORIGINAL

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAIʻI

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JUL 02 2025 RR
at 12 o'clock and 30 min. P M
Lucy H. Carrillo, Clerk

RICHARD SLEZAK, Plaintiff,

v.

YOUNG MEN'S CHRISTIAN ASSOCIATION OF MAUI (Maui YMCA); PLANET FITNESS (Maui, Hawaii location); MAUI COUNTY; ALEXANDER & BALDWIN, LLC; STEVE SCRAGGS; MISTY AMORIN; JANE DOES 1–10, BRIAN BUSTOS; ERICA FLORES; JOHN DOES 1–10, CORPORATIONS 1–10, DOE PARTNERSHIPS 1–10, and DOE GOVERNMENTAL ENTITIES 1–10, Defendants.

**Civil No.** ____________

CV25 00272 SASP RT

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND HAWAIʻI PUBLIC ACCOMMODATIONS LAW**

---

# I. PARTIES

1. **Plaintiff Richard Slezak** is an individual residing at P.O. Box 330601, Kahului, Maui, Hawaii 96733. His phone number is (808) 385-6871, and his email is richardslezak@yahoo.com. Plaintiff suffers from **severe bilateral hip arthritis**, diagnosed via a recent MRI, which significantly limits major life activities, including walking and performing manual tasks. Specifically, this condition prevents him from bending and twisting sufficiently to put on traditional athletic shoes, necessitating the use of **safe non-slip sandals** for exercise.

2. **Defendant YOUNG MEN'S CHRISTIAN ASSOCIATION OF MAUI (Maui YMCA)** operates a public fitness facility located at 250 Kanaloa Avenue, Kahului, Hawaii 96732. It is a **public accommodation** subject to Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq.

3. **Defendant PLANET FITNESS (Maui, Hawaii location)** is a national gym franchise that operates a facility located at 150 Ho'okele Street, Kahului, Hawaii 96732. It is also a **public accommodation** under the ADA.

4. **Defendant MAUI COUNTY** is a governmental entity that owns the land on which the Maui YMCA operates. Maui County leases this land to the Maui YMCA at rates substantially below fair market value, thereby providing significant financial support to its operations and potentially rendering the Maui YMCA's actions as occurring under **color of law and authority**, or making Maui County liable through its control of the property.

5. **Defendant ALEXANDER & BALDWIN, LLC** owns the commercial property located at 150 Ho'okele Street, Kahului, Hawaii 96732, which is leased by Planet Fitness. As the property owner, Alexander & Baldwin, LLC is responsible for ensuring ADA compliance on its premises, including the common areas and points of access.

6. **Defendant STEVE SCRAGGS** is the Chief Executive Officer of the Maui YMCA. At all relevant times, he acted in his **individual and official capacity** and, due to the substantial governmental support of the Maui YMCA, acted under **color of law and authority** when making decisions that denied Plaintiff reasonable accommodations and when allegedly retaliating against Plaintiff.

7. **Defendant MISTY AMORIN** is the Chief Operating Officer of the Maui YMCA. At all relevant times, she acted in her **individual and official capacity** and participated in decisions that denied Plaintiff reasonable accommodations and when allegedly retaliating against Plaintiff.

8. **Defendant BRIAN BUSTOS** is an employee or manager of Planet Fitness (Hawaii locations). At all relevant times, he acted in his **individual and official capacity** and participated in decisions that denied Plaintiff reasonable accommodations.

9. **Defendant ERICA FLORES** is a Vice President of Planet Fitness. At all relevant times, she acted in her **individual and official capacity** and participated in decisions that denied Plaintiff reasonable accommodations.

10. **Defendants JOHN DOES 1–10, JANE DOES 1–10, DOE PARTNERSHIPS 1–10, DOE CORPORATIONS 1–10, and DOE GOVERNMENTAL ENTITIES 1–10** are currently unidentified individuals or entities who are responsible, in whole or in part, for the violations alleged herein. Plaintiff will seek to amend this Complaint to include their true names and capacities once ascertained.

---

# II. JURISDICTION AND VENUE

11. This Court has **subject matter jurisdiction** over the federal claims pursuant to 28 U.S.C. § 1331, as the claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

This Court has **supplemental jurisdiction** over the state law claims pursuant to 28 U.S.C. § 1367.

12. **Venue** is proper in this District under 28 U.S.C. § 1391(b), as all events giving rise to this Complaint occurred in Maui, Hawaii.

---

# III. FACTUAL ALLEGATIONS

13. Plaintiff joined the Maui YMCA at the end of **April 2025** and began regular use of its facilities in approximately **early May 2025**.

14. Upon his first visit to the Maui YMCA in early May 2025, Plaintiff observed multiple, significant violations of ADA and Hawaii law concerning disabled parking. Specifically, Plaintiff noted: a. Disabled parking spaces were not immediately adjacent to the entrance and primary parking area. b. There was a lack of sufficient width for accessibility for each disabled spot. c. Only two disabled parking spots were available, despite the parking lot containing more than 51 total parking spaces, which is insufficient under ADA guidelines for a facility of this size. d. There was no signage other than markings on the pavement for disabled parking spaces. e. A sloped curb cut was blocked by a parked car and was not located at the nearest part of the entrance. Source: **2010 ADA Standards for Accessible Design, Table 208.2**

15. On **Thursday, June 12, 2025**, upon arrival at the Maui YMCA, Plaintiff attempted to park in an area he perceived to be safer and farthest from the children's summer day camp activities, which occupied approximately one-third of the main parking lot. This area was, however, apparently within a closed parking section, and Plaintiff was informed he could not park there. Plaintiff later inquired with another staff member about permissible parking, who initially directed him to park in the same closed area before being re-informed that it was prohibited. This interaction resulted in a total delay of approximately 15 minutes from Plaintiff's arrival until a suitable and safe parking spot became available.

16. On June 12, 2025, Plaintiff spoke with Maui YMCA staff, including Defendant Misty Amorin, Chief Operating Officer. Plaintiff suggested that the Maui YMCA should provide alternative parking in grassy areas due to the significant portion of the main parking lot being closed for the summer camp. Plaintiff also raised concerns about the inadequate number of disabled parking spaces and the frequent unauthorized parking in designated access aisles due to a lack of proper signage.

17. In response, Defendant Misty Amorin asserted that the Maui YMCA had adequate disabled parking and markings in compliance with the law, which Plaintiff believes is inaccurate. Ms. Amorin then suggested Plaintiff park "across the street." Plaintiff explained that crossing the street was not a safe option for him, particularly if he were tired or fell due to his condition, as it could lead to severe injury or death. Plaintiff emphasized that crossing at night would introduce

additional dangers. Due to these parking challenges and the stress of the interaction, Plaintiff was unable to complete an adequate workout, despite being at the facility for about two hours.

18.Later on June 12, 2025, Defendant Steve Scraggs, the Maui YMCA CEO, left Plaintiff a message.

19.On **Friday, June 13, 2025**, Plaintiff called Defendant Steve Scraggs to discuss the parking issues. Plaintiff informed Mr. Scraggs that, according to law, the Maui YMCA did not have adequate signage or sufficient disabled parking spaces. Mr. Scraggs stated that they would implement temporary signs and provided Plaintiff with his cell number, instructing Plaintiff to call him if he needed assistance finding parking upon his arrival.

20.On **Sunday, June 15, 2025**, Plaintiff arrived at the Maui YMCA around 12:30 PM, planning for an hour-and-a-half workout before the facility closed at 2:00 PM. Upon arrival, Defendant Misty Amorin was present and informed Plaintiff that he could not use the weight machines or the treadmill. This decision was in retaliation for Plaintiff's previous complaints regarding parking. Plaintiff had been allowed to use the weight machines and treadmill while wearing his sandals from early May until Saturday, June 14, 2025.

21.Plaintiff explained to Ms. Amorin that the Health Director, Jean Sevilla, had previously inquired about his wearing sandals while using the treadmill. Plaintiff had explained to Ms. Sevilla that due to his limited range of motion from severe arthritis, he is unable to put on traditional athletic shoes. Plaintiff further explained that his sandals, which feature non-slip surfaces on both the footbed and the sole, provide the safest method for him to work out. Ms. Sevilla understood Plaintiff's situation and had previously allowed him to continue his workout. Plaintiff also pointed out to Ms. Amorin that the signage in the second-floor section (where the treadmill is located) does not indicate a requirement for athletic shoes.

22.Ms. Amorin stated that Plaintiff would need to speak with the CEO and texted Defendant Steve Scraggs. Mr. Scraggs called back, and Plaintiff spoke with him until sometime after 1 PM. This meant that again, as on Thursday, Plaintiff did not have an adequate workout because of the harassment by the Maui YMCA staff and the time consumed resolving the issue.

23.During the call on June 15, 2025, Defendant Steve Scraggs reiterated that Plaintiff needed to wear athletic shoes in the areas with weight machines and treadmills. Plaintiff informed Mr. Scraggs that, given his medical condition and the Maui YMCA's refusal to accommodate, he would consider suing the Maui YMCA under Federal disability laws. Plaintiff also recounted a similar problematic experience with Planet Fitness, which likewise refused to allow him to work out under similar circumstances due to footwear policies.

24.Plaintiff explained to Mr. Scraggs on June 15, 2025, that the risks associated with him using the treadmill and leg machines in his non-slip sandals are very limited, and that the potential harm of not using these machines for his rehabilitation far outweighs any perceived dangers of using them with sandals. Plaintiff emphasized that climbing the stairs to reach the treadmill area presents a far greater risk of injury, especially if he were to fall from the top of the stairs, than any potential incident on the treadmill itself. Plaintiff also reiterated that the suggestion to park

across the street was significantly more dangerous than using the weight machines, as a fall or collision while crossing the street, particularly if he was tired or attempting to avoid traffic, could result in serious injury or death.

25. Defendant Steve Scraggs asserted that Plaintiff was not being discriminated against because the rules applied to everyone. However, Plaintiff explained that, due to his disability, applying these rules universally effectively prevents him from using the equipment. Plaintiff drew an analogy, stating that just as he cannot use the facility if he cannot park close enough, denying equipment access based on a universally applied rule that disproportionately impacts disabled individuals is discriminatory. Plaintiff used the analogy of a bathroom with only urinals; while "available to everyone," it would effectively exclude women from safe use.

26. Defendant Steve Scraggs stated that he would permit Plaintiff to use the treadmill with his sandals "today" (June 15, 2025) and would contact the Maui YMCA's insurance company to determine if they would allow this as a regular accommodation. Plaintiff informed him that if the Maui YMCA's plan was to block his access to necessary equipment for his recovery, he would proceed with a lawsuit in Federal court. Plaintiff also mentioned that his inability to comfortably cross the street is partly due to not being able to use treadmills to build up his stamina and speed. Finally, Plaintiff emphasized that the Maui YMCA is intended for everyone to train, and they should provide equipment or accommodations that allow disabled individuals to safely strengthen themselves, as limiting equipment use constitutes discrimination against the disabled community.

27. Immediately after his conversation with Mr. Scraggs on June 15, 2025, Plaintiff climbed the stairs to the second-floor treadmill area. Maui YMCA instructor "Eva" observed Plaintiff and commented, "You were doing great." Plaintiff asked Eva to relay this observation to Misty Amorin and confirm that he could use the treadmill safely. Eva agreed, and Misty later confirmed to Plaintiff that Eva had indeed communicated this to her, directly contradicting any claims of Plaintiff's inherent unsafety with his footwear or mobility.

28. On the morning of **Thursday, June 19, 2025**, Plaintiff had a forced unplanned meeting with Defendants Misty Amorin and Steve Scraggs shortly after entering the YMCA. After approximately 15 minutes, it became clear that they would not allow Plaintiff to use the facility because he was unable to comply with their demand to wear athletic shoes. Plaintiff spoke in an emphatic voice, stating that Mr. Scraggs was not acting for Plaintiff's safety, as claimed, but was harming him. Plaintiff repeatedly stated that it was necessary for him to use the treadmill for rehabilitation because it was very safe, given the secure hand-holds, and that the stairs could cause far more injury to him than a treadmill. Plaintiff emphasized that the treadmill is the best tool to develop strength, stamina, agility, and flexibility.

29. During the June 19, 2025 meeting, Defendant Steve Scraggs repeatedly asserted that his decision was for Plaintiff's safety and also claimed that the Maui YMCA's insurance company and lawyer had advised them that they could enforce the policy. When Plaintiff raised his voice for emphasis, Mr. Scraggs told Plaintiff he had to leave and could not come back until Mr. Scraggs called him back. This effectively barred Plaintiff from the facility. At the same meeting,

Mr. Scraggs also falsely claimed that the Maui YMCA had enough parking spaces and that they were properly marked, contradicting Plaintiff's earlier observations and complaints.

30. Separately, **Defendant Planet Fitness (Maui, Hawaii location)**, and its employees, **Defendants Brian Bustos and Erica Flores**, have consistently denied Plaintiff access to its exercise equipment and facilities from **October 2024 to the present**, citing an athletic shoe policy. This refusal to allow Plaintiff to work out has persisted despite Plaintiff's repeated explanations of his disability and medical necessity for his specific non-slip sandals.

31. Specifically, Plaintiff corresponded with Planet Fitness management, including Defendants Brian Bustos and Erica Flores, in October 2024 and December 2024, regarding his need for accommodation. These Defendants refused to respond to Plaintiff's correspondence and continued to deny him access.

32. Plaintiff provided Planet Fitness, including Defendants Bustos and Flores, with medical notes from his Medical Doctor Travis Glenn and his licensed physical therapist, clearly indicating his disability and the necessity of using the gym facilities, as well as the need for modifications to the facility's footwear policy to allow him to use it safely. Despite these professional medical endorsements, Defendants Bustos and Flores, and Planet Fitness, continue to refuse accommodation.

33. Most recently, on **Saturday, June 21, 2025**, Planet Fitness denied Plaintiff access to the facility's exercise areas because he needed to wear athletic shoes anywhere on the black mats, which cover almost the entire facility's exercise floor. This pervasive rule prevented Plaintiff from even laying down to stretch or using his resistance band by attaching it to his ankle, rendering virtually the entire facility inaccessible for his necessary rehabilitation exercises.

34. Plaintiff's medical professionals, including Nurse Practitioner Naomi, Primary Care Physician Travis Glenn, Orthopedic Surgeons Drs. Richardson and Yamazaki (in Honolulu), and Physician Assistant Scott Smith, have numerous times refused to provide a specific medical note stating that Plaintiff "should be allowed to use the weight machines and the treadmill," and that it was "beneficial" for him to do so. This highlights the undue burden placed on Plaintiff by Defendants' arbitrary demands for specific documentation, as even his own doctors are unwilling to provide it, demonstrating a systemic barrier rather than a justified safety concern. Plaintiff, having severe arthritis and limited range of motion, is the best judge of his own safe usage.

35. Defendants Maui County and Alexander & Baldwin, LLC, through their ownership, control, and facilitation of the operations of these public accommodations, have facilitated these ADA violations by failing to ensure and enforce compliance with federal and state disability laws on their respective properties.

# IV. CLAIMS FOR RELIEF

### COUNT I: Violation of the Americans with Disabilities Act (42 U.S.C. § 12181 et seq. including violations of 42 U.S.C. § 12182(b)(2)(A)(ii) )

36. Defendants failed to make **reasonable modifications** in policies, practices, or procedures, including their rigid athletic shoe rules and inadequate disabled parking, thereby excluding Plaintiff from participation in or denying him the benefits of public accommodations.

### COUNT II: Retaliation Under ADA (in violation of 42 U.S.C. § 12203(a), which prohibits retaliation against individuals who assert ADA rights." )

37. Maui YMCA Defendants retaliated against Plaintiff for asserting his ADA rights, including by restricting his access to equipment after he complained about ADA violations.

### COUNT III: Violation of HRS § 489-3 (Hawai'i Public Accommodations Law)

38. Defendants discriminated against Plaintiff in violation of state law by failing to accommodate his disability and retaliating against him for asserting his ADA rights.

---

# V. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Issue a **Temporary Restraining Order and Preliminary Injunction** requiring Defendants to: 1. Allow use of exercise facilities while Plaintiff wears medically necessary non-slip sandals; 2. Cease retaliation against Plaintiff; 3. Comply with ADA parking standards at the Maui YMCA.

B. **Declare Defendants' conduct unlawful** under federal and state disability laws.

C. **Award damages** for emotional distress and lost access.

D. **Award litigation costs** and such other and further relief as the Court deems just and proper.

E. Grant such other and further relief as this Court deems just and equitable

---

# VI. DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

---

# VII. SIGNATURE BLOCK

DATED: June 22, 2025

Respectfully submitted,

/s/ Richard Slezak

Richard Slezak P.O. Box 330601, Kahului, HI 96733

Phone(808) 385-6871

email richardslezak@yahoo.com

Pro Se Plaintiff

---